IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRUCE WINKWORTH and MARCIA )
BOTELHO, Individually, on behalf of )
themselves and on behalf of all others )
similarly situated, )
)
        Plaintiffs, )   Civil Action No. 19-1011
)
vs. )
)
SPECTRUM BRANDS, INC., )
)
        Defendant. )

## MEMORANDUM OPINION

Plaintiffs Bruce Winkworth and Marcia Botelho ("Plaintiffs") commenced this class action lawsuit to seek redress with respect to an allegedly defective and dangerous condition present in Remington® Hot Rollers ("Hot Rollers") that were warranted, advertised, distributed, and sold by Defendant Spectrum Brands, Inc., ("Spectrum"). Plaintiffs allege that due to a latent defect, the Hot Rollers heat to unreasonably unsafe temperatures when operated as instructed and, therefore, expose consumers to dangerous contact with their skin.

The Complaint alleges claims for breach of express warranty, breach of the implied warranty of merchantability, violation of the Magnuson-Moss Consumer Products Warranties Act ("MMWA"), negligence, and negligent failure to warn. Plaintiffs assert these claims on their own behalf and on behalf of two putative classes: (1) a nationwide declaratory judgment/injunctive relief class, and (2) a Pennsylvania-only damages class. Specifically excluded from both classes are claims for personal injury and wrongful death.

Presently pending before the Court is Spectrum's motion to dismiss the Complaint for failure to state a claim. For the reasons stated herein, Spectrum's motion will be granted in part and denied in part.

I. **Procedural History**

Plaintiffs commenced this lawsuit in the Court of Common Pleas of Jefferson County, Pennsylvania, in July 2019. (ECF No. 1-1 ("Compl.").) Spectrum subsequently removed the case to this Court based on the Class Action Fairness Act and now seeks dismissal of Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (ECF No. 9.) Spectrum's motion has been fully briefed. (ECF Nos. 10, 15, 21.)

II. **Factual Background**

According to the allegations of the Complaint, Plaintiff Winkworth purchased a Hot Rollers product in February 2018. The Complaint does not include any other factual allegations about Plaintiff Winkworth. Plaintiff Botelho ("Botelho") is alleged to be the owner and end user of the Hot Rollers. (Compl. ¶¶ 19, 21, 41.)

On May 17, 2018, Botelho notified Spectrum that she had burned herself while using her Hot Roller.[1] (*Id.* ¶¶ 22, 43, 84.) Specifically, in an email to Spectrum's customer service department, she stated that "I sent [sic] before that this model is no good, now the end of a curler fell off went down my shirt and burned my chest, what are you going to do about that." (*Id.* ¶¶ 22, 42.)

---

[1] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). Plaintiffs cite to Exhibit B of the Complaint in reference to Botelho's communications with Spectrum, but there are no exhibits attached to the Complaint because Plaintiffs inadvertently failed to attach the exhibits when filing this action. Plaintiffs' counsel subsequently provided Spectrum with copies of those exhibits. (ECF No. 10 at 3 n.1.) Accordingly, Exhibit B to Spectrum's brief can be considered. (*Id.* at 18–22). *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

According to the Complaint, other consumers have also complained about defects in the Hot Rollers. (*Id.* ¶¶ 45-47.)

When Spectrum offered to send a replacement, Botelho stated that she did not want a replacement and that she "really [thought] [the Hot Rollers] should be taken off the market." (Exh. B at 2–3.) Spectrum then offered to send Botelho any product of her choice that was available on Spectrum's website. (*Id.* at 2.) Botelho replied that she did not "want any of those products. Burns hurt and scar." (*Id.*) In a follow up inquiry, Spectrum asked Botelho "[w]ill you be seeking medical attention? Would you be interested in a refund?" (*Id.*) Botelho responded that the burn was better but it "did scar my chest. Now what? I hope you recalled it. Its dangerous. If I decide to get a lawyer I will." (*Id.* at 1.) Spectrum then advised Botelho that in order to assist with her injury claim, her information was being forwarded to their insurance company and that a representative from the insurance company would contact her. (*Id.*) There are no allegations in the Complaint that reflect that any refund or replacement was provided to either of the Plaintiffs.

Plaintiffs assert that according to Spectrum's website, the Hot Rollers utilize an exclusive "thermal wax core" to create long lasting curls. (Compl. ¶ 2.) According to the Complaint, Spectrum also represents on its website that the Hot Rollers are built with plastic "cool touch ends" for safe and comfortable use and that these plastic ends are designed to protect against the heating element in the Hot Rollers, i.e., the thermal wax core. (*Id.* ¶ 4.)

Due to what Plaintiffs characterize as a latent defect, however, the Hot Rollers heat to unreasonably unsafe temperatures. (*Id.* at ¶ 5.) Although Spectrum affirmatively represents that the Hot Rollers comply with the applicable standards regarding surface temperatures for consumer goods, Plaintiffs allege that the Hot Rollers actually violate those standards. (*Id.* ¶¶ 7–12, 31–39.) At such high temperatures, the plastic end caps allegedly become loose and detach from the Hot

3

Rollers. (*Id.* ¶¶ 5, 12.) This exposes consumers to dangerous skin contact not only with the hot plastic end, but also the metal underneath it that it is designed to guard against. (*Id.* ¶¶ 5, 30.) Plaintiffs assert that this alleged defect "is unreasonably dangerous and renders the Hot Rollers unfit to use when curling hair with a bare hand—their intended and ordinary purpose." (*Id.* ¶ 16.)

According to the allegations of the Complaint, this latent defect exists in every Hot Roller that left Spectrum's control. (*Id.* ¶ 60.) Based on excerpts from various online consumer reviews included in the Complaint, Plaintiffs assert that Spectrum has possessed knowledge of this defect for several years. (*Id.* ¶¶ 45–47.) Plaintiffs believe that Spectrum "acknowledged internally that the [d]efect caused injuries and burns to consumers." (*Id.* ¶ 48.) Yet, according to Plaintiffs, Spectrum provides no warnings or instructions in the Hot Rollers' "Use and Care Guide" to alert consumers of this defect and its effects; continues to market, sell, and warrant the Hot Rollers; and has failed to implement a recall or repair program. (*Id.* ¶¶ 40, 49.)

The Complaint alleges that the Hot Rollers have defects in workmanship and materials. (*Id.* ¶¶ 53, 103, 107.)

Spectrum provides a "Limited Two-Year Warranty" with respect to the Hot Rollers. (*Id.* ¶ 52.) This express warranty provides coverage "against any defects that are due to faulty material or workmanship . . ." (*Id.*) If a Hot Roller manifests a defect within the warranty period, Spectrum promises to provide a replacement free of charge. (*Id.*) Plaintiffs claim that Spectrum breached this warranty by not repairing or replacing the Hot Rollers. (*Id.* at ¶ 58.)

According to Plaintiffs, although the Hot Rollers are not merchantable as consumer goods sold in the United States, Spectrum warrants, markets, and advertises that the Hot Rollers are of merchantable quality and fit for the ordinary purpose for which they are used, which is curling with a bare hand. (*Id.* ¶¶ 16, 59, 62.) Therefore, Spectrum fell short of its warranty obligations

because it failed to remedy and eliminate the latent defect in the Hot Rollers that causes burns or creates substantial risk of burns. (*Id.* at ¶ 63.)

Plaintiffs state causes of action for breach of the implied warranty of merchantability (Count I), breach of express warranty (Count II), violation of the Magnuson-Moss Consumer Products Warranty Act ("MMWA") (Count III), negligence (Count IV), and negligent failure to warn (Count V).

### III. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*,

550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV. **Discussion**

In its motion to dismiss, Spectrum argues that Plaintiffs' breach of express warranty claim must be dismissed because the alleged latent defect in the Hot Rollers is a design defect, but its limited warranty only warrants against defects due to faulty material or workmanship. It also asserts that Plaintiffs' claims for breach of express and implied warranties fail because Spectrum satisfied its obligations under those warranties by offering Botelho both a replacement product and a refund.[2]

With respect to the MMWA claim, Spectrum maintains that because Plaintiffs' causes of action for breach of express and implied warranties fail to state a claim upon which relief may be

---

[2] To assert warranty claims in Pennsylvania, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" 13 Pa. C.S. § 2607(c)(1). Because Plaintiffs do not allege that Winkworth notified Spectrum of the defect, it is unclear if or how they contend that he is an appropriate plaintiff with respect to the warranty claims asserted in the Complaint. While Spectrum has not specifically addressed Winkworth's warranty claims for failure to comply with the notice requirement of § 2607, it has moved to dismiss all warranty claims asserted in the Complaint.

granted, their MMWA claim, which is based on a breach of those warranties, necessarily fails as well.

In seeking dismissal of Plaintiffs' claims for negligence and negligent failure to warn, Spectrum contends that those claims are barred by the economic loss rule. Finally, Spectrum asserts that Plaintiffs' request for injunctive relief should be stricken from the Complaint because they lack standing to seek such relief.

Each of these issues will be addressed below.

A. <u>Plaintiffs' express warranty claim</u>

In Pennsylvania, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa. C.S. § 2313(a). It is well established that "[a] manufacturers' liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).

Spectrum argues that Plaintiffs' breach of express warranty claim fails because as pleaded in the Complaint, the alleged defect in the Hot Rollers is a design defect, and the limited warranty extends only to defects that are due to faulty material or workmanship. However, the Complaint alleges that the Hot Rollers have defects in workmanship and materials as well as design defects. (Compl. ¶¶ 53, 103, 107.) More specifically, Plaintiffs contend that the defect in the material selection of the plastic end caps referenced in the Complaint is a defect in workmanship or materials, and therefore, falls within the ambit of the express warranty. (ECF No. 15 at 8; *see* Compl. ¶ 104.)

Spectrum asserts that by claiming that the choice of material was defective, Plaintiffs are asserting a design defect, not a defect in material. Plaintiffs counter that at this stage of the

proceedings, it would be premature to make any conclusive determination regarding the nature of the alleged defect or defects. *See, e.g., Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between a defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives.").

Accordingly, because the Court cannot resolve this issue at the pleading stage, it concludes that it cannot dismiss the express warranty claim on this basis.

At the same time, Spectrum also argues that it complied with the terms of its warranty by offering a replacement to Plaintiff Botelho which she rejected.[3] Because Botelho refused this remedy, Spectrum contends, Plaintiffs' breach of express warranty claim fails. *See Davenport v. Medtronic, Inc.*, 302 F. Supp. 2d 419, 441 (E.D. Pa. 2004) (dismissing breach of express warranty claim because the plaintiff decided not to avail himself of the relief provided by the terms of the warranty).

Relying on the Supreme Court's decision in *Campbell-Ewald Co. v. Gomez*, Plaintiffs argue that Spectrum's pre-suit offer does not foreclose their warranty claims because it has lapsed and is, therefore, "a legal nullity." 136 S. Ct. 663, 670 (2016). *Campbell-Ewald*, however, is inapposite. In that case, the Supreme Court rejected a mootness challenge in the context of an unaccepted offer of judgment under Federal Rule of Civil Procedure 68. *Id.* at 671. The Supreme Court explained that such an offer "is considered withdrawn" if not accepted within 14 days, providing plaintiff no relief and leaving his personal stake in the litigation unchanged. *Id.* at 671–

---

[3] Spectrum also asserts that it offered Botelho a refund. This issue is addressed *infra* in connection with the implied warranty claim.

72 (quoting Fed. R. Civ. P. 68(b)). *Campbell-Ewald* offers no guidance on warranty claims and a defendant's compliance with and satisfaction of its warranty obligations. Here, Spectrum's offer of a replacement product was not a settlement offer. Rather, it is the remedy Spectrum promised to provide under its limited warranty.[4]

Based upon the Complaint and its exhibits, it appears that Botelho was offered a replacement product by Spectrum and rejected it. That would satisfy Spectrum's warranty obligations and compel dismissal of this claim. At the same time, Botelho's May 2018 email suggests that this was not the first time that she notified Spectrum about the alleged defect. (Compl. ¶ 22.) The parties' prior communications, if any, and their potential relevance to this claim are not set forth in the Complaint.

Therefore, Spectrum's motion to dismiss the express warranty claim will be granted without prejudice. Plaintiffs will be granted leave to amend this claim in the event that they can allege facts that would support a claim that Spectrum failed to comply with the terms of the limited warranty as it relates to the Plaintiffs' individual claim(s).

B. Plaintiffs' breach of implied warranty of merchantability claim

Under Pennsylvania law governing implied warranty of merchantability, every seller warrants, among other things, that the goods are "fit for the ordinary purposes for which such goods are used." 13 Pa. C.S. § 2314(b)(3). To establish a breach of an implied warranty of

---

[4] Plaintiffs also argue that their warranty claims should survive because, despite Botelho's request to recall the Hot Rollers, Spectrum did not cure the alleged defect by providing a remedy on a class-wide basis. This argument is untenable because Plaintiffs cannot premise their breach of warranty claims on damages "suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). They first must have standing to assert claims on their own behalf. (*See id.*) ("[Plaintiffs] must allege and show that they personally have been injured . . . [in order to] seek relief on behalf of [themselves] or any other member of the class.").

merchantability, Plaintiffs must allege that "(1) that the product malfunctioned; (2) that plaintiffs used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." *Altronics of Bethlehem, Inc. v. Repco, Inc.*, 957 F.2d 1102, 1105 (3d Cir. 1992).

The measure of damages in a breach of implied warranty claim is the difference between the value of the goods accepted and their value if they had been as warranted. 12 Pa. C.S. § 2714. In seeking dismissal of Plaintiffs' breach of implied warranty of merchantability claim, Spectrum argues that Plaintiffs have no damages because they rejected Spectrum's offer to provide a refund. Assuming that Plaintiff Botelho's Hot Rollers had no value because of the alleged defect, Spectrum's offer to refund the purchase price would have made her whole had she accepted the offer. Therefore, Spectrum argues, Plaintiffs cannot now contend that they have suffered damages because they rejected an offer that would have made them whole.

However, Spectrum's fundamental assertion that it offered a refund which Botelho did not accept is not clear from the parties' email exchange. As an initial matter, it appears that Spectrum asked Botelho if she would be interested in a refund after inquiring whether she would be seeking medical attention. Even if this statement is construed as an offer for a refund, the email exchange that is part of the Complaint does not conclusively reflect that Botelho definitively understood it as such and rejected it, or that she was otherwise made whole. Rather, Botelho updated Spectrum on her alleged injury and Spectrum advised her that her claim was being forwarded to its insurance company. This suggests that the focus of that particular exchange may have been on Botelho's injury as opposed to addressing a warranty claim. Further, the Complaint does not allege that Spectrum actually sent or attempted to send Botelho a refund that was rejected. Therefore, Spectrum's argument fails, at least at this stage.

C. Plaintiffs have alleged a plausible MMWA claim

The MMWA provides a private right of action in federal court for consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, [or] implied warranty." 15 U.S.C. § 2310(d)(1). Spectrum argues that because Plaintiffs have failed to state a viable state law claim for a breach of express or implied warranties, their derivative MMWA claim necessarily fails and must also be dismissed. *See Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010) (affirming dismissal of MMWA claims that were based on state law breach of warranty claims that had been dismissed). Because the Court has determined that Plaintiffs have adequately alleged a claim for breach of an implied warranty, however, Spectrum's motion to dismiss must be denied.

D. Plaintiffs' negligence and negligent failure to warn claims are barred by the economic loss rule

Under Pennsylvania law, the economic loss doctrine bars tort claims involving defective products where the plaintiff's loss is damage to the product itself. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). The Supreme Court has explained that "[d]amage to a product itself . . . means simply that the product has not met the customer's expectations, or, in other words, that the customer has received 'insufficient product value.'" *E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 872 (1986) (citing J. White and R. Summers, Uniform Commercial Code 406 (2d ed. 1980)). Therefore, such claims are "most naturally understood as . . . warranty claim[s] . . . [because] maintenance of product value and quality is precisely the purpose of express and implied warranties." *Id.* (footnote and citation omitted).

Here, the Complaint explicitly excludes all claims for personal injury and wrongful death. (Compl. ¶¶ 67, 68.) Plaintiffs' loss, therefore, is premised solely on damage to the product itself,

11

that is, the diminished value and quality of the Hot Rollers due to their alleged defects. This brings Plaintiffs' tort claims squarely within the ambit of the economic loss doctrine.

Relying on *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018), however, Plaintiffs contend that their negligence and negligent failure to warn claims are not barred by that doctrine. In *Dittman*, the Pennsylvania Supreme Court found a specific carve-out to the economic loss doctrine under a negligence theory where a legal duty exists "independently of any contractual duties between the parties." *Id.* at 1054 (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 463 S.E.2d 85, 88 (S.C. 1995)). Plaintiffs assert that their negligence and negligent failure to warn claims fit that carve-out because Spectrum had a duty (1) to ensure that its Hot Rollers did not pose a significantly increased or unreasonable risk of injury to consumers, and (2) to use reasonable care to warn consumers about the risks and dangers regarding the use of the Hot Rollers.

The relationship between Plaintiffs and Spectrum, and Spectrum's duties to Plaintiffs, are based upon Plaintiffs' purchase and use of Hot Rollers to which certain express and implied warranties apply. These warranties relate to the quality and characteristics of the Hot Rollers, including that they are free of defects due to faulty material or workmanship and can be used for their ordinary purpose. Thus, Spectrum's legal duties to Plaintiffs and other purchasers of Hot Rollers are contract-based. Plaintiffs do not allege any facts in their Complaint from which the Court could conclude that Spectrum had duties to them that are not encompassed in these express and implied warranties, or that Spectrum has other duties that are grounded in tort. Therefore, as alleged in their Complaint, any duty Spectrum owes to Plaintiffs regarding the condition of the Hot Rollers is governed solely by the express and implied warranties.

Because no independent legal duty apart from those warranties exists, the Court finds that Plaintiffs' negligence and negligent failure to warn claims are barred by the economic loss rule and must be dismissed.

E. <u>Plaintiffs lack standing to seek injunctive relief</u>

A plaintiff seeking injunctive relief bears the burden of establishing that she is "'likely to suffer future injury' from the defendant's conduct." *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices & Liab. Litig.*, 903 F.3d 278, 292 (3d Cir. 2018) (quoting *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 223 (3d Cir. 2012)). In class actions, at least one named plaintiff must satisfy this future injury requirement. *McNair*, 672 F.3d at 223 (citations omitted).

In *McNair*, the Third Circuit considered whether the plaintiffs who were "former customers" of a magazine company had standing to seek injunctive relief. 672 F.3d at 215. The company offered magazine subscriptions under a "continuous service plan" in which "a customer's subscription does not expire unless and until the customer opts to cancel it." *Id.* at 216. Initial subscriptions were offered at "free or greatly reduced rates" and then, once the promotional period ended, customers were charged regular rates until the subscription was cancelled. *Id.* The plaintiffs brought a putative class action to enjoin the company's alleged "deceptive business practices." *Id.* at 219.

The *McNair* Court held that the plaintiffs lacked standing to seek injunctive relief. *Id.* at 227. This holding was premised on the plaintiffs failure to "establish[] any reasonable likelihood of future injury." *Id.* at 225. Because the plaintiffs were former customers who were already aware of the company's advertising practices, the Third Circuit concluded that any future injury they might suffer was "wholly conjectural." *Id.* at 219. The *McNair* Court explained that while the plaintiffs may in the future accept an offer, "speaking generally, the law accords people the dignity

13

of assuming that they act rationally, in light of the information they possess." *Id.* at 225. This type of speculative future harm did not confer standing to seek injunctive relief. *Id.*

Similarly, in *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices & Liability Litigation*, the plaintiff filed a class action against a drug manufacturer asserting she received "'unsafe' Baby Powder despite being promised 'safe' Baby Powder[.]" 903 F.3d 278, 288 (3d Cir. 2018). The plaintiff sought "injunctive relief in the form of 'corrective advertising' and 'enjoining Defendants from continuing the unlawful practices' of selling Baby Powder without properly warning consumers of the alleged health risks." *Id.* at 292. Relying on *McNair*, the Third Circuit held that the plaintiff lacked standing to seek injunctive relief because she was not likely to suffer future injury from the defendants' conduct due to her awareness of the alleged health risks associated with the Baby Powder. *Id.* In so holding, the Third Circuit explicitly refused "to give cognizance to this sort of 'stop me before I buy again' claim." *Id.* at 293.

Here, Plaintiffs allege that the in-box disclaimers that limit the applicable express and implied warranties to two years are unconscionable and unenforceable. (Compl. ¶¶ 69, 85, 90.) Plaintiffs argue that such "warranty exclusions, limitations and disclaimers dissuade consumers from filing a claim." (ECF No. 15 at 16.) Therefore, Plaintiffs seek to enjoin Spectrum from engaging in "practices aimed at discouraging customers who purchased defective Hot Rollers from seeking the full panoply of remedies available to them." (Compl. ¶ 133.)

Plaintiffs have not alleged that they will sustain future injury. Moreover, given their allegations that the Hot Rollers are defective and their communications with Spectrum, it is unreasonable to assume that Plaintiffs would sustain future injury by repurchasing Hot Rollers. Indeed, "the law accords people the dignity of assuming that they act rationally, in light of the

information they possess." *McNair*, 672 F.3d at 225. Because Plaintiffs have not established any reasonable likelihood of future injury, they lack standing to seek injunctive relief against Spectrum.

Accordingly, Plaintiffs' request for injunctive relief must be dismissed.

F. <u>Claims of Plaintiff Winkworth</u>

Other than the allegation that Plaintiff Winkworth purchased Hot Rollers, the Complaint includes no factual allegations that appear to support any of the claims asserted therein. For example, he is not alleged to be the owner of the Hot Rollers, to have used the product, have had knowledge of any alleged defects, placed Spectrum on notice of alleged defects or communicated with Spectrum in any way. Therefore, Spectrum could not have fulfilled any express or implied warranty obligation that it might have had to him. Moreover, given the measure of damages for breach of warranty, it does not appear that both Plaintiffs cannot not recover such damages from Spectrum.

As such, the claims of Plaintiff Winkworth are dismissed without prejudice.

V. <u>Conclusion</u>

For the reasons discussed herein, Spectrum's motion to dismiss (ECF No. 9) will be granted in part and denied in part. An appropriate order will follow.

BY THE COURT:

PATRICIA L. DODGE
United States Magistrate Judge

Dated: June 30, 2020